UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVONIA PUBLIC SCHOOLS, &
METROPOLITAN ASSOCIATION FOR                Case No. 16-cv-10324
IMPROVED SCHOOL LEGISLATION,

                                            Paul D. Borman
                    Plaintiffs,             United States District Judge

v.

SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST

                    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO MODIFY THE COURT'S AUGUST 24, 2018 OPINION AND ORDER

## I.      INTRODUCTION

By Motion, Plaintiffs Livonia Public Schools (LPS) and Metropolitan

Association for Improved School Legislation (MAISL) ask the Court to revisit its

August 24, 2018 Opinion and Order (ECF No. 76), which granted in part and denied

in part the parties' cross-motions for summary judgment in this insurance coverage

dispute. (ECF No. 84, Motion to Modify.) Specifically, Plaintiffs ask the Court to

reevaluate its holding that "[Defendant] Selective [Insurance Company of the

Southeast (Selective)]'s duty to defend the underlying lawsuits under the 2010-2011

and 2011-2012 Primary Policies is based on three occurrences in the Doe lawsuit

under the 2010-2011 Primary Policy [and] three occurrences in the Doe lawsuit

under the 2011-2012 Primary Policy." (ECF No. 76, O&O, PgID 101.) Plaintiffs base their Motion to Modify on the district court's "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment" rather than any Federal Rule of Civil Procedure or Local Rule. (ECF No. 88, Reply in Support of Motion to Modify, PgID 3874–75 (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).)

The Motion to Modify, ostensibly based on new developments in the underlying cases, raises a new legal theory under *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185 (9th Cir. 1988)*, attempts to relitigate theories considered and rejected by the Court in the Opinion and Order, and brings up an issue that was not addressed in the Opinion and Order.[1] The Court finds that, even with the additional information created by the resolution of the underlying lawsuits, the August 24, 2018 Opinion and Order was neither clearly erroneous nor manifestly unjust, and therefore the Court denies Plaintiffs' Motion to Modify.

---

[1] The fourth alternative modification requested by Plaintiffs in their Motion to Modify is a finding that "all losses and defense expenses incurred for the 2103 Doe Complaint should be allocated to the 2011-2012 policy year." (ECF No. 84, Motion to Modify, PgID 3466.) Although Defendant Selective discussed the proper allocation of defense costs between the policies in its Motion for Summary Judgment (ECF No. 59, Selective MSJ, PgID 2803–04 (citing *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 916 F. Supp. 2d 813, 833 (W.D. Mich. 2013))), as well as in its Response to Plaintiffs' Motion for Partial Summary Judgment (ECF No. 65, Selective Response to MSJ, PgID 2929 (citing *Alticor*, 916 F. Supp. 2d at 833)), the Court did not address the proper method of allocation in the Opinion and Order so the Court does not resolve this question here, in the context of a motion to modify.

2

## II.  BACKGROUND

In this case, Plaintiffs LPS and MAISL and Defendant Selective dispute the extent to which Selective owes LPS, under certain insurance policies, the duty to defend and the duty to indemnify in connection with several lawsuits filed on behalf of physically and/or mentally disabled children against LPS, LPS employees, and members of the LPS school board. (ECF No. 76, O&O, PgID 3367.) Each lawsuit was based on allegations that Sharon Turbiak, a special-needs teacher at Webster Elementary School, and Nancy Respondek, a classroom aide in Turbiak's classroom, physically, verbally, and emotionally abused the plaintiff children, and allegations that school administrators knew about this behavior and failed to act. (*See id.* at PgID 3367–71.) By now, all of the underlying lawsuits have been dismissed or settled.

Only one of these underlying lawsuits, *Doe, et al. v. Livonia Public Schools, et al.*, No. 13-cv-11687 (E.D. Mich. 2013) (Levy, J.), is relevant to the motion now before the Court. In *Doe*, the parents of three children brought 85 federal and state claims on behalf of their children against 17 individuals and LPS—alleging that Turbiak and Respondek committed acts of physical and emotional abuse "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)." (ECF No. 1-10, *Doe* Federal Complaint, PgID 464–580.) On October 12, 2018, Judge Levy granted summary judgment to the defendants on all 51 federal claims and dismissed the state law claims without prejudice. *Doe*, No. 13-cv-11687, 2018 WL 4953086

(E.D. Mich. Oct. 12, 2018). The *Doe* plaintiffs then filed suit in state court to pursue their remaining claims, this time alleging abuse only in the 2011-2012 school year. (ECF No. 84-5, *Doe* State Complaint, PgID 3747–80.) The state case was settled and dismissed on October 23, 2019.

The insurance policies relevant to the Motion to Modify are the 2010-2011 and the 2011-2012 "Primary Policies," in which Selective agreed to pay damages and expenses "in excess of the self insured retention" for "bodily injuries or personal injuries, suffered or alleged to have been suffered" that were "caused by an occurrence during the term of this insurance." (ECF No. 1-3, 2011-2012 Policy, PgID 109.) The policies define "occurrence" as "an accident; . . . a happening; . . . an event; or . . . continuous or repeated exposure to conditions," that "unexpectedly or unintentionally lead to bodily injury or property damage during the term of this insurance." (*Id.* at PgID 116.) According to the definition, "[a]ll exposure to the same general conditions of one location is one occurrence." (*Id.*) The self insured retention (SIR), is the amount that the insured, LPS/MAISL, must pay in its own defense before the insurer, Selective, becomes obligated to pay. (*Id.* at PgID 84.) The SIR for the relevant policies is $500,000 per occurrence. (*Id.*) The parties dispute the number of occurrences alleged in the federal *Doe* lawsuit and whether any of the alleged occurrences fall under the 2010-2011 policy.

On August 18, 2017, Plaintiffs filed an Amended Joint Motion for Partial Summary Judgment seeking rulings that (1) the policies covered the underlying lawsuits and "Selective owed a duty to defend and pay past and ongoing defense costs incurred in the three[2] lawsuits," (2) Selective was estopped from changing its original coverage position that all of the underlying lawsuits constituted only "two claims with two $500,000 [SIRs]," and (3) other declarations not relevant to the motion now before the court. (ECF No. 60, Plaintiffs' MSJ, PgID 2894–96.) Plaintiffs, in their brief, made clear their position that the underlying lawsuits triggered the duty to defend under only one policy year, 2011-2012, but did not discuss their position on whether, based on a correct interpretation of the policy, the underlying lawsuits constituted one "occurrence" per policy year triggered, three "occurrences" per year (one for each lawsuit), or five "occurrences" per year (one for each plaintiff). (ECF No. 57, Plaintiffs' MSJ, PgID 2563–65.) Plaintiffs' initial position on this question, as stated in their Amended Complaint, was "[t]he claim of each of the five plaintiffs in the Underlying Lawsuits constitutes a separate occurrence." (ECF No. 8, Amended Complaint, PgID 792, ¶ 78; *see also, id.* at PgID 793, 795, ¶¶ 79–80, 85(a-b).) Regardless of the correct interpretation of the policy language, Plaintiffs maintained that Selective was estopped from changing its

---

[2] At that time, there were three relevant federal court cases—since that time, all federal cases were dismissed (two at summary judgment and one was settled) and two state lawsuits based on the same conduct were filed, litigated, and settled.

original position that the lawsuits constituted two total occurrences (so two total $500,000 SIRS), one under the 2010-2011 policy and one under the 2011-2012 policy. (*Id.* at PgID 840, ¶¶ 248–49; ECF No. 57, Plaintiffs' MSJ, PgID 2569.)

Selective responded to Plaintiffs' Joint Motion for Partial Summary Judgment by arguing that the 2010-2011 primary policy duty to defend was triggered by the allegations in the *Doe* case because the *Doe* plaintiffs alleged that the abuse occurred "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)." (ECF No. 65, Selective Response to MSJ, PgID 2928–29.) These allegations, according to Selective, arguably fall within the coverage of the 2010-2011 policy and therefore constitute one occurrence and one SIR for each of the three *Doe* plaintiffs for each policy year, resulting in a total of six occurrences and SIRs. (*Id.*) Selective also disputed Plaintiffs' estoppel theory. (*Id.* at PgID 2929–37.) Plaintiffs devoted their Reply to the estoppel issue. (ECF No. 69, Plaintiff Reply on MSJ, PgID 3148–53.)

Selective filed its own Motion for Summary Judgment on August 18, 2017. (ECF No. 59, Selective MSJ.) In it, it asked the Court to rule that "there is one occurrence per claimant per policy period" and to find against Plaintiffs' estoppel, waiver, and reformation theories. (*Id.* at PgID 2787.) Selective based its argument for one occurrence per claimant per policy period on the language of the policies, the "cause test" described in *Dow Chem. Co. v. Associated Indem. Corp.*, 727 F. Supp. 1524 (E.D. Mich. 1989), and cases holding that related acts of sexual abuse

constituted one occurrence per victim per policy period. (ECF No. 59, Selective MSJ, PgID 2799–2802.) Regarding the question of whether the *Doe* complaint triggered the 2010-2011 primary policy, Selective argued that proof of injury to the plaintiffs during the 2010-2011 policy period was unnecessary because the duty to defend "is not limited to meritorious suits." (*Id.* at PgID 2802–03 (quoting *Auto Club Group Ins. Co. v. Burchell*, 249 Mich. App. 468, 480–81 (2002).)

In response to Selective's Motion for Summary Judgment, Plaintiffs did not dispute Selective's interpretation of the policy language to find that there was one occurrence (so one $500,000 SIR) per victim per policy period. (*See* ECF No. 66, Plaintiffs Response to MSJ, PgID 3106.) Instead, they reiterated their estoppel arguments and argued, in the alternative, that there were no occurrences in the 2010-2011 policy period. (*Id.* at PgID 3107.) To support their argument on the 2010-2011 policy, Plaintiffs pointed to the response brief filed by the *Doe* plaintiffs at the summary judgment stage in the federal *Doe* case, in which the plaintiffs stated that the plaintiffs were afternoon students in Turbiak's classroom during only the 2011-2012 school year and identified specific incidents in only January and March 2012. (*Id.* at PgID 3106–07 (referring to ECF No. 57, Plaintiffs' MSJ, PgID 2549–52).) They also argued that the phrase in the *Doe* complaint, "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)," is inherently ambiguous and the ambiguity should be resolved in their favor. (*Id.* at PgID 3107.) Selective did not

address either of these issues in its Reply. (ECF No. 70, Selective Reply on MSJ, PgID 3214–20.)

The Court held a hearing on the motions on December 14, 2017, and issued an Opinion and Order that partially granted and partially denied both motions on August 24, 2018. (ECF No. 76.) Regarding the question of the number of occurrences, the Court found that the claims in the underlying lawsuits constituted one occurrence per plaintiff. (*Id.* at PgID 3405, 3449.) In reaching this conclusion, the Court found that there was "no dispute" because Plaintiffs had asserted, in their Amended Complaint, that "[t]he claim of each of the five plaintiffs in the Underlying Lawsuits constitutes a separate occurrence," (ECF No. 8, Amended Complaint, PgID 792, ¶ 78) and because Plaintiffs had not made any arguments regarding the correct interpretation of the policy definition of occurrence. (ECF No. 76, O&O, PgID 3405.) The Court also rejected Plaintiffs' estoppel argument regarding the number of occurrences. (*Id.* at PgID 3435–38.)

On the issue of whether there were any occurrences under the 2010-2011 primary policy, the Court held that "[t]he allegations in the *Doe* lawsuit, even if unspecific, are sufficient to impose a duty to defend on Selective, which in turn justifies Selective's position that there were occurrences in the 2010-2011 policy period." (*Id.* at PgID 3406.) In a footnote in this section of the Opinion and Order, the Court wrote:

At the December 14, 2017 hearing on the instant Motions, Plaintiffs'
counsel argued that just as Selective concluded that the 2010-2011
policies were not triggered by the *Telerico* lawsuit—i.e., after
determining that the *Telerico* plaintiff did not actually attend Webster
during that academic year—the same reasoning should compel a
conclusion that the 2010-2011 policies were not triggered by the *Doe*
lawsuit, because the filings in the *Doe* litigation suggest that the three
*Doe* plaintiffs were all in the same classroom only during the 2011-
2012 policy year, and because no specific incidents during the 2010-
2011 policy year have been pled or proven. (*See* ECF No. 74, Transcript
of December 14, 2017 Hearing at 57:6-20.)

When it comes to the duty to defend, "[t]he insurer has the duty to look
behind the third party's allegations to analyze whether coverage is
possible." *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452
Mich. 440, 450–51 (1996). Under this principle, there is a distinction
between the discovery of evidence that definitively precludes coverage
of a particular claim (such as the fact that the *Telerico* plaintiff did not
attend Webster during the 2010-2011 year) and the simple fact that the
claim has not been proven (as is the case with the *Doe* plaintiffs' claims
regarding the 2010-2011 school year). At this time, this distinction
justifies Selective's position that the *Doe* lawsuit implicates the 2010-
2011 policy year. The Court notes, however, that if and when it is no
longer the case that "coverage is possible" as to the *Doe* lawsuit's 2010-
2011 allegations, Selective will be obligated to adjust its position
accordingly.

(*Id.* at PgID 3407 n. 12.) The other holdings in the Opinion and Order are not relevant

to the Motion before the Court.

The parties appeared before the Court for a Status Conference on November

2, 2018 (*See* ECF No. 77.) At the status conference the parties discussed the October

12, 2018 grant of summary judgment in the underlying federal *Doe* case, and

Plaintiffs indicated their belief that Judge Levy's opinion was relevant to the

question of whether coverage was possible under the 2010-2011 case. (*See* ECF No.

79, Communication to Parties as they Proceed to Facilitation (Corrected), PgID 3453.) The Court directed the parties to go back to facilitation to try to resolve the case, and, on November 19, 2018, issued a communication to the parties saying that Judge Levy's opinion is "certainly relevant to the instant case." (*Id.*)

Facilitation was fruitless,[3] and Plaintiffs filed their Motion to Modify the Court's August 24, 2018 Opinion and Order on October 4, 2019. (ECF No. 84.) In it, the Plaintiffs argue that Judge Levy's opinion in the federal *Doe* case and the state court complaint filed by the *Doe* plaintiffs on December 14, 2018 compel the Court to modify the August 24, 2018 Opinion and Order to find no occurrences under the 2010-2011 policy year. (*Id.* at PgID 3465.) In the Motion, Plaintiffs also ask the Court to modify the Opinion and Order to find a single occurrence applicable to the *Doe* case, to modify the Opinion and Order to find two occurrences for the 2010-2011 policy year because no specific injury to C.W. Doe was alleged in the *Doe* complaint, or to modify the Opinion and Order to find that all of the losses and defense expenses incurred for the federal *Doe* case should be allocated to the 2011-2012 policy year. (*Id.* at PgID 3465–66.) The Motion was fully briefed. (*See* ECF No. 86, Selective Response; ECF No. 88, Reply in Support of Motion to Modify.)

---

[3] Plaintiffs indicate that they engaged in facilitation until mid-July 2019. (ECF No. 84, Motion to Modify, PgID 3464.)

### III.    STANDARD OF REVIEW

"District Courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory*, 922 F.2d at 1282. This power is recognized by Federal Rule of Civil Procedure 54(b):

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). If a party seeks reconsideration of an interlocutory order, "the district court has authority to reexamine the question . . . hold whatever hearings it deems advisable, and redetermine the issue in light of its findings and conclusions." *Mallory*, 922 F.2d at 1282. This "inherent procedural power" allows district courts to "reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient." *Leelanau Wine Cellars, Ltd. v.. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. Dec. 29, 2004). A District Court may exercise this power *sua sponte*, as did the court in *Leelanau*, or it may do so on motion of the parties. *Id.* at 945–46; *see also In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008) (finding a district court's *sua sponte* decision to vacate an order to be proper exercise of inherent power).

Typically, when a party asks a district court to exercise its power to reconsider, rescind, or modify an interlocutory order, it does so through a motion for reconsideration. In the Eastern District of Michigan, motions for reconsideration are

governed by Local Rule 7.1(h), which requires parties to file the motion "within 14 days after entry of the judgment or order" and show "a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled," which, if corrected, "will result in a different disposition of the case." "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D. Mich. 2017). No Local or Federal Rule establishes a standard for a "motion to modify" an interlocutory order, so the Court must look for guidance in the rules and case law establishing standards of review for similar motions.

Because a motion to modify is materially indistinguishable from a motion for reconsideration—both ask the court to reevaluate a previous decision—the Court should first look to the standard of review for motions for reconsideration. In addition to the palpable defect standard for both final and interlocutory orders set out in Local Rule 7.1(h), "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare*, 89 F. App'x 949, 959 (6th Cir. Feb. 6, 2004)). Generally, motions for reconsideration "may not be used to raise issues that could have been raised in the previous motion."

*Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012). If the district court's resolution of the motion for reconsideration is appealed, arguments that were raised for the first time in the motion for reconsideration are forfeited and will not be considered unless the result would be a plain miscarriage of justice. *Id.*

The only way to distinguish Plaintiffs' Motion to Modify from a typical motion for reconsideration is the fact that it purports to rely on new evidence—Judge Levy's opinion in the federal *Doe* case and the *Doe* complaint in state court. (*See* ECF No. 84, Motion to Modify, PgID 3480–86.) In this regard, the Motion to Modify is analogous to a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(2), which permits courts to grant relief from a final judgment, order, or proceeding on the basis of "newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)." A motion under Rule 60(b) "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The newly discovered evidence must have been previously unavailable and be likely to produce a different result. *Michigan Dep't of Envtl. Quality*, 296 F. Supp. 3d at 846 (internal quotations and citations omitted). Rule 60(b) may not be used to relitigate the case. *Id.*

Based on this analysis, the Court finds the following standard appropriate: if failure to consider the new arguments presented in the Motion to Modify would lead

to manifest injustice, or if the new evidence renders the conclusions reached in the prior opinion clearly erroneous or manifestly unjust, the Court may consider the new arguments and evidence and grant the Motion to Modify. This standard acknowledges the Court's inherent power to reconsider interlocutory orders but also reflects the "common denominator" among the rules governing motions to reconsider, modify, or vacate prior decisions of the court: "a party that has had a fair chance to present its arguments ought not have a second bite at the apple." *Michigan Dep't of Envtl. Quality*, 296 F. Supp. 3d at 847.

## IV.   ANALYSIS

Plaintiffs, in their Motion to Modify, urge the Court to modify its conclusion that Selective's duty to defend the federal *Doe* lawsuit is based on three occurrences under the 2010-2011 policy and three occurrences under the 2011-2012 policy, a conclusion that requires Plaintiffs to pay six SIRs before Selective is obligated to pay anything. (ECF No. 84.) Plaintiffs ask the Court to limit the duty to defend the federal *Doe* lawsuit to only one occurrence under the 2011-2012 policy, to three occurrences under the 2011-2012 policy, or to five occurrences—two under the 2010-2011 policy and three under the 2011-2012 policy. (*Id.* at PgID 3465–66.) If the Court does not find modification of the number of occurrences appropriate, Plaintiffs ask the Court to add a finding that all losses and defense expenses incurred for the *Doe* complaint should be allocated to the 2011-2012 policy year. (*Id.* at PgID

3466.) In support of this motion, they offer several different arguments, which boil down to create two main issues for the Court: (1) how to apply the "cause test" to determine the number of occurrences in the context of allegations of physical and/or emotional abuse of children; and (2) whether, considering Judge Levy's opinion granting summary judgment in the federal *Doe* case and the *Doe* state court complaint, Selective owed a duty to defend under the 2010-2011 policy.

There is one threshold issue. Selective argues that the Motion to Modify is itself improper—saying that no rule permits it and that it is actually "an untimely motion for reconsideration or a late second attempt at summary judgment." (ECF No. 86, Selective Response, PgID 3827.) Selective is right. The Motion to Modify was not timely under any applicable or analogous procedural rule. Plaintiffs filed it 404 days after the entry of the Opinion and Order it seeks to modify, 355 days after the entry of the summary judgment in the federal *Doe* case, 292 days after the complaint was filed in the state *Doe* case, and more than 60 days after facilitation ended. *See* E.D. Mich LR 7.1(h) (14 days after entry of judgment or order); Fed. R. Civ. P. 56(b) (30 days after the close of all discovery); Fed. R. Civ. P. 60(b)(2) (within a reasonable time up to one year after entry of final judgment). Plaintiffs also did not seek leave of Court to file their motion—Local Rule 7.1(b)(2) requires leave of Court to file a second motion for summary judgment and parties should seek leave

of Court whenever they wish to file a motion that is not affirmatively permitted by the applicable procedural rules.

However, the Court has discretion to consider the motion because its inherent power to reconsider and amend its interlocutory orders is not limited by the previously mentioned procedural rules. *See generally, In re Saffady*, 524 F.3d at 803. The Court will consider this motion, despite its procedural impropriety, because Plaintiffs are somewhat justified in filing it. Plaintiffs construed the Court's footnote saying, "[t]he Court notes, however, that if and when it is no longer the case that "coverage is possible" as to the *Doe* lawsuit's 2010-2011 allegations, Selective will be obligated to adjust its position accordingly," as an invitation to ask the Court to reconsider the question of occurrences under the 2010-2011 policy after additional factual development in the federal *Doe* case. (ECF No. 76, O&O, PgID 3407 n. 12.) Although the developments relied on by Plaintiffs do not change the analysis of whether coverage was possible and the footnote does not invite the Motion to Modify's full-scale attempt to relitigate summary judgment, the Court acknowledges that Plaintiffs' reading of the footnote is reasonable and therefore considers the Motion to Modify, subject to the standard of review set out above.

## A.    The Cause Test

Plaintiffs base their first argument, that the Opinion and Order should be modified to reflect a single occurrence for all three *Doe* plaintiffs, on a 1988 Ninth

Circuit case which affirmed a district court's holding that eleven civil rights lawsuits alleging excessive force by police constituted a single occurrence under a general liability policy similar to the one at issue here. *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1187–88 (9th Cir. 1988). A twelfth lawsuit that alleged police harassment instead of excessive force was considered a second occurrence. *Id.* The basis for the *Mead* court's ruling was the fact that municipal liability under 28 U.S.C. § 1983 is "necessarily premised on a single policy or custom" of condoning a series of similar police acts, so the cause of the city's liability was not each individual act of excessive force but the policy itself. *Id.* Plaintiffs argue that the claims against the LPS defendants also had a single cause, the "alleged knowledge of and deliberate indifference to Turbiak's alleged abusive conduct" by school administrators, which means, under *Mead*, that there was a single occurrence. (ECF No. 84, Motion to Modify, PgID 3486–88.)

This argument is a blatant attempt to use a new, but previously available, theory to relitigate the number of occurrences after the failure of Plaintiffs' estoppel theory. Selective addressed the question of whether the underlying lawsuits constituted one occurrence total or one occurrence per claimant per policy period in its Motion for Summary Judgment. (*See* ECF No. 59, Selective MSJ, PgID 2799–2800 ("To determine whether multiple instances of injury constitute one or more occurrences, Michigan applies the "cause test.").) Selective cited *Dow Chem. Co. v.*

17

*Associated Indem. Corp.*, 727 F. Supp. 1524 (E.D. Mich. 1989) and *Michigan Chem. Corp. v. Am. Home Assurance Co.*, 728 F.2d 374 (6th Cir. 1984), which establish the cause test for interpreting the term "occurrence" in similarly worded general liability insurance policies. (*Id.*) The cause test is the proposition that multiple injuries with the same "proximate, uninterrupted, and continuous cause" are one occurrence. *Dow Chem. Co.*, 727 F. Supp. at 1529. Selective argued that the causes of the alleged injuries to each child were separate acts of abuse and therefore each child's allegations were a separate occurrence. (ECF No. 59, Selective MSJ, PgID 2800–02.) Selective bolstered this argument with a discussion of cases involving coverage of allegations of multiple acts of sexual abuse of children—the majority of which have concluded that there is one occurrence per alleged victim per policy period. (*Id.* (citing *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 150 F.3d 526, 532 (5th Cir. 1998) (collecting cases)).)

Plaintiffs chose not to address Selective's argument regarding the cause test in their Response, choosing instead to rely on their estoppel claims to limit the number of occurrences. The Court relied on this lack of dispute, as well as Plaintiffs' statement in their Amended Complaint that "[t]he claim of each of the five plaintiffs in the Underlying Lawsuits constitutes a separate occurrence" (ECF No. 8, Amended Complaint, PgID 792, ¶ 78) and found that there was one occurrence per plaintiff per policy period. (ECF No. 76, O&O, PgID 3405.)

The Court does not consider Plaintiffs' *Mead* argument on the merits. Plaintiffs had ample opportunity to make this argument in their Response to Selective's Motion for Summary Judgment, or even in their own Motion for Partial Summary Judgment, but failed to do so. A motion to modify, which is, in essence a motion for reconsideration "may not be used to raise issues that could have been raised in the previous motion." *Evanston Ins. Co.*, 683 F.3d at 692. Failure to address the *Mead* argument will also not result in a plain miscarriage of justice. The reasoning of courts that have found that multiple related acts of abuse against multiple victims constitute one occurrence per victim is persuasive. *See, e.g.*, *H.E. Butt*, 150 F.3d at 534 ("Here, it is clear that each child's injuries are independent and caused by separate acts of sexual abuse.) The allegations of sexual abuse and related allegations of negligent supervision in those cases are more analogous to the allegations of physical abuse and related allegations of deliberate indifference, failure to report, and failure to adequately investigate in the underlying lawsuits than are the allegations of a policy of condoning excessive force by the police in *Mead*. Accordingly, the Court denies the Motion to Modify's invitation to find one occurrence total for the federal *Doe* lawsuit.

## B.    Duty to Defend under the 2010-2011 Policy

The remainder of Plaintiffs arguments focus on the question of whether there were any occurrences under the 2010-2011 policy. (*See* ECF No. 84, Motion to

Modify, PgID 3488–99.) Specifically, they insist that Judge Levy's opinion in the federal *Doe* case made "key findings of fact" that were "confirmed" by the state *Doe* complaint and these findings of fact make it clear that Selective never owed a duty to defend the *Doe* lawsuit under the 2010-2011 policy. (*See* ECF No. 88, Reply in Support of Motion to Modify, PgID 3878–80.) Judge Levy's opinion and the state court complaint, however, are not strong enough pieces of evidence to compel the Court to change its opinion—in fact, neither piece of evidence is significantly probative on the question of whether the federal *Doe* lawsuit contained allegations of occurrences under the 2010-2011 policy.

It is well settled that an insurer's duty to defend is broader than its duty to indemnify. *American Bumper*, 452 Mich. at 450–51. It "encompasses even frivolous and unfounded allegations," *Shepard Marine Constr. Co. v. Maryland Cas. Co.*, 73 Mich. App. 62, 65 (1976), and extends "to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 102 Mich. App. 136, 142 (1981). Insurers owe a duty to defend "despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Id.* The duty to defend exists when "coverage is possible." *Id.*

Coverage is possible whenever the allegations against the insured arguably state a covered claim. *See id.* For instance, in *Detroit Edison* the defendant insurance company owed Detroit Edison, the insured, a duty to defend an employee's workplace injury suit when the coverage exclusion for employee negligence had an exception for supervisory liability and the allegations in the complaint led to a reasonable inference of an unstated allegation that Detroit Edison failed to properly supervise the employee's work. *Id.* at 139–42. As these facts make clear, the duty to defend is not dependent "upon the skill in pleading of a third party." *Shepard Marine*, 73 Mich. App. at 65. The insurer must look behind the allegations in the third-party complaint to determine whether coverage is possible. *Id.* "Uncertainty regarding whether an allegation comes within the scope of the policy must be resolved in the policyholder's favor." *American Bumper*, 452 Mich. at 455.

Insurers must determine whether coverage is possible at the time the third-party files a complaint against the insured. *See American Bumper*, 452 Mich. at 455 (finding that insurer owed duty to defend lawsuit that proved to be groundless because an occurrence under the policy was possible based on the allegations). To hold otherwise would be to deprive insureds of their bargained-for right to a defense against meritless claims. *See id.* at 458. This is also what distinguishes the duty to defend from the duty to indemnify—the duty to defend exists whenever a third-party's allegations arguably qualify for coverage, the duty indemnify exists only

when the third-party's allegations have been proven true or when, after factual development, the insurer and insured decide settle the claims rather than test their veracity in court. *See, e.g.*, *Citizens Ins. Co. v. Secura Ins.*, 279 Mich. App. 69 (2008) (finding that insurer owed duty to defend but that duty to indemnify turned on fact-finder's determination of the issue upon which coverage depended).

There are some situations, as this Court acknowledged in the Opinion and Order, where, after some factual development, overwhelming evidence proves that coverage was never possible. This was the case with the *Telerico* plaintiff, who did not attend Webster during the 2010-2011 school year and therefore could not have been subjected to physical and verbal abuse that year. (*See* ECF No. 76, O&O, PgID 3407 n. 12.) This type of evidence is distinguishable from a mere lack of evidence in support of a claim that is later proved groundless—once a defense has run its course, the duty to defend cannot be determined "[w]ith the benefit of hindsight" because that would eviscerate the duty. *American Bumper*, 452 Mich. at 455; *see also Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 916 F. Supp. 2d 813, 828 n. 14 (W.D. Mich. 2013) ("Coverage is triggered by the claims and allegations, even when ultimately groundless or frivolous, and not whether the plaintiff later proves, or fails to prove, the allegations to be true.").

This Court, in determining whether the federal *Doe* Complaint alleged occurrences in the 2010-2011 policy year, and thus determining whether Selective

had a duty to defend under the 2010-2011 policy, held, "[t]he allegations in the *Doe* lawsuit, even if unspecific, are sufficient to impose a duty to defend on Selective" for that policy year. (ECF No. 76, O&O, PgID 3406.) It further stated, "[t]he record contains no indication that there has been any legal determination, in the *Doe* lawsuit itself or otherwise, establishing that no "occurrences" took place as to any of the plaintiffs in that action during the 2010-2011 policy year." (*Id.*) This holding was not clear legal error. The federal *Doe* Complaint alleged that Turbiak and Respondek physically and/or emotionally abused the plaintiffs "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)" and listed specific incidents in 2012 with the caveat "[b]y way of example." (ECF No. 1-10, *Doe* Federal Complaint, PgID 470–72, ¶¶ 50–59.) The complaint also describes a "pattern of conduct" of abuse. (*Id.* at PgID 472, ¶ 60.) These allegations lead to the reasonable inference that the *Doe* plaintiffs expected to find evidence of additional instances of abuse in the 2010-2011 school year and intended to include those instances of abuse in their lawsuit. Therefore, the *Doe* plaintiffs alleged possible occurrences in 2010-2011 and coverage under that policy was possible.

Now, Plaintiffs argue that Judge Levy's opinion in the federal *Doe* case and the complaint in the state *Doe* case, which contains allegations of abuse in only the 2011-2012 school year, prove that coverage was never possible under the 2010-2011 school year. (*See* ECF No. 84, Motion to Modify, PgID 3494–99.) There are two

23

problems with this argument—(1) neither piece of evidence is particularly probative on the question of whether coverage was possible under the allegations of the federal *Doe* complaint, and (2) the premise of the argument, that proof of bodily injury to each *Doe* plaintiff in 2010-2011 is required for the duty to defend, is incorrect.

First, an opinion granting summary judgment, by rule, is a legal conclusion reached on the basis of undisputed material facts—a court ruling on a motion for summary judgment does not weigh the evidence or make contested factual findings and it need not discuss allegations that did not generate factual support. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") A court may discuss which facts are in dispute, which facts are material, and which are undisputed, but the court does not conclusively establish all of what was alleged in the first place nor does it conclusively establish what actually happened. The state court complaint is even less probative—it is a second attempt by the *Doe* plaintiffs to redress their perceived harms. Though it may reflect a reassessment of which allegations they can support and prove, it does nothing to limit the scope of allegations they presented in their previous case. Neither Judge Levy's opinion nor the subsequent state court filing definitively prove that coverage was never possible under the 2010-2011 policy.

Second, Plaintiffs insist, throughout their various arguments on whether the federal *Doe* complaint triggered the duty to defend under the 2010-2011 policy, that proof that each of the *Doe* plaintiffs "*actually sustained "bodily injury" during the 2010-2011 school year*" is required to trigger the duty to defend under that policy. (*See, e.g.*, ECF No. 84, Motion to Modify, PgID 3491.) All of their arguments regarding 2010-2011 occurrences depend on this premise—for instance, Plaintiffs' alternative argument that there should be only one occurrence for plaintiff C.W. Doe is based on the fact that "the 2013 Doe Complaint never alleged any specific "occurrence" involving C.W. Doe." (*Id.* at PgID 3498.) Similarly, Plaintiffs' attempt to recharacterize the broad allegation that Turbiak and Respondek physically and/or emotionally abused the plaintiffs "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)" (ECF No. 1-10, *Doe* Federal Complaint, PgID 464) into an allegation that "the LPS Defendants knew of this hostile teaching environment in the 2010-2011 school year, and were deliberately indifferent to the situation in the 2011-2012 school year" only makes sense if proof of bodily injury is required to establish an occurrence for the duty to defend.[4] (ECF No. 84, Motion to Modify,

_____

[4] Although the Court does not address Plaintiffs' fourth alternative argument regarding the proper allocation of losses between the policy, this argument also relies on the premise discussed in this section. (*See* ECF No. 84, Motion to Modify, PgID 3499–3500.)

PgID 3490.) This premise misunderstands the distinction between the proof needed to trigger the duty to defend and the proof needed to trigger the duty to indemnify.

When a policy defines "occurrence" as an event that "unexpectedly or unintentionally lead[s] to bodily injury or property damage during the term of this insurance," as the policies here at issue do, an injury during the term of policy is required to trigger the duty to indemnify under that policy. (ECF No. 1-3, 2011-2012 Policy, PgID 116 (emphasis added)); *see Gelman Sci., Inc. v. Fidelity and Cas. Co.*, 456 Mich. 305, 321 (1998) ("[A]n actual injury must occur during the time the policy is in effect in order to be indemnifiable or compensable.") The duty to defend is therefore triggered whenever a third-party's allegations arguably allege that an injury occurred during the time the policy was in effect. *See, Citizens Ins. Co*, 279 Mich. App. 69 (distinguishing proof required for duty to indemnify from simple allegations required for duty to defend). The difference in the amount of proof required to trigger the duties is necessary because "the duty to defend includes groundless and frivolous claims." *American Bumper*, 452 Mich. at 458.

Here, as discussed in the Opinion and Order and above, the federal *Doe* Complaint arguably alleged bodily injury during the 2010-2011 policy year. It alleged multiple acts of abuse in either or both of the 2010-2011 and 2011-2012 school years and alleged specific incidents "[b]y way of example," implying that more incidents had occurred. (ECF No. 1-10, *Doe* Federal Complaint, PgID 470–72,

¶¶ 50–59.) Evidence of specific incidents in the 2010-2011 school year did not emerge during discovery. In fact, the *Doe* plaintiffs were not able to produce enough evidence to avoid summary judgment on all of their federal claims. But that dearth of evidence does not entitle Selective to disclaim its duty to defend under the policies—once the defense has run its course, "it [is] too late for the insurer[] to complain that [it does] not owe a duty to defend." *American Bumper*, 452 Mich. at 455.

Finally, in their Motion to Modify, Plaintiffs revive an argument they made in their response to Selective's Motion for Summary Judgment, that the *Doe* Plaintiffs' use of the phrase "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)" was inherently ambiguous and the ambiguity should be resolved in their favor. (ECF No. 84. Motion to Modify, PgID 3491–94; *see also* ECF No. 66, Plaintiffs Response to MSJ, PgID 3106.) This argument is easily disposed of. In addition to already having been considered and rejected by the Court, it stretches the ambiguities-resolved-in-favor-of-the-insured rule too far.

In *H.E. Butt*, facing an argument that the definition of "occurrence" should be considered ambiguous and resolved in the insured's favor, the Fifth Circuit noted that, in cases where the insured serves as its own primary insurer through SIR limits, "the interpretation of 'occurrence' favorable to the insured in this case will not necessarily be the interpretation favorable to the insured in the next case," and

refused to find that "occurrence" was ambiguous. 150 F.3d at 534 ("The Seventh Circuit noted, however, that "[w]inners and losers will change with the circumstances, the roles. . . . [I]f tomorrow the victim's loss exceeds the maximum coverage for a single occurrence, the roles will be reversed.") (citation omitted). The intent of the rule is to protect the reasonable expectations of the policyholder, not to allow a sophisticated self-insuring entity to change the terms of the contract depending on the extent of liability it faces in a particular case. *See Gelman Sci.*, 456 Mich. at 318. Plaintiffs argument that the ambiguity in the federal *Doe* complaint regarding the 2010-2011 policy year should be resolved in their favor was properly rejected in the Opinion and Order and the Court now rejects it again.

## V.  CONCLUSION

For the reasons stated above, the Court denies Plaintiffs' Motion to Modify the Court's August 24, 2018 Opinion and Order (ECF No. 84).

IT IS SO ORDERED.


Dated:  February 13, 2020                   s/Paul D. Borman
                                            Paul D. Borman
                                            United States District Judge