UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVONIA PUBLIC SCHOOLS, &
METROPOLITAN ASSOCIATION FOR
IMPROVED SCHOOL LEGISLATION,

Case No. 16-cv-10324

Paul D. Borman
United States District Judge

Plaintiffs,

v.

SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST

Defendant.
_____/

OPINION AND ORDER:
(1) GRANTING DEFENDANT'S MOTION TO CONFIRM SATISFACTION OF DEFENSE OBLIGATIONS AND DISMISS COUNTS VII AND VIII OF PLAINTIFFS' AMENDED COMPLAINT AS MOOT (ECF NO. 92), and
(2) DENYING PLAINTIFFS' MOTION TO APPORTION ALL OF THE DOE LAWSUIT DEFENSE EXPENSES TO THE 2011-2012 POLICY PERIOD AND FOR JUDGMENT ON THE SPECIFIC AND AGGREGATE EXCESS LOSS CLAIMS (ECF NO. 94)

## I. INTRODUCTION

In this long-standing insurance coverage suit, both parties agree that it is time for a final judgment—the underlying lawsuits have been settled and the total defense costs have been tallied up—but they disagree over who owes what to whom. Defendant Selective Insurance Company of the Southeast (Selective) says that it has paid all of the defense costs that it is obligated to pay under its policies and this Court's prior rulings on the application of those policies to the claims alleged in the underlying lawsuits (ECF No. 92), and, in fact, argues that it overpaid by $6,405.92

(ECF No. 98). Plaintiffs Livonia Public Schools (LPS) and Metropolitan Association for Improved School Legislation (MAISL) say that all of the defense costs associated with the underlying lawsuit, *Doe v. Livonia Public Schools*, No. 13-cv-11687 (E.D. Mich.), should be apportioned to the 2011-2012 policy period, rather than split equally between the 2010-2011 policy period and the 2011-2012 policy period, resulting in Selective owing LPS and MAISL an additional $935,609.76, plus 12% interest. (ECF No. 94.) For the reasons explained below, the Court agrees with Defendant, and finds that Selective has fully satisfied its defense obligations under the relevant policies and must be reimbursed for its $6,405.92 overpayment.

## II.    BACKGROUND

The Court described the background of this case in detail in its two prior Opinions and Orders. (ECF No. 76, O&O I, PgID 3350–97; ECF No. 93, O&O II, PgID 3937–44.) Essentially, this case is a dispute over the extent to which Selective owes LPS and MAISL, under certain insurance policies, the duty to defend several lawsuits filed on behalf of physically and/or mentally disabled children against LPS, LPS employees, and members of the LPS school board, for alleged physical, verbal, and emotional abuse perpetrated by Sharon Turbiak, a special-needs teacher at Webster Elementary School, and Nancy Respondek, a classroom aide in Turbiak's classroom,. (ECF No. 76, O&O I, PgID 3367–71.) All of the underlying lawsuits

have been dismissed or settled, and this Court has resolved most of the legal questions in its two prior Opinions and Orders. (ECF Nos. 76 & 93.)

First, on August 24, 2018, the Court ruled on the parties' cross-motions for summary judgment. (ECF No. 76.) The Court found that the claims in the underlying lawsuits constituted one "occurrence" per plaintiff per policy period, including three occurrences, one per plaintiff in the *Doe* case, in the 2010-2011 policy period. (*Id.* at PgID 3406–07.) This meant two things: (1) coverage under the insurance policies was triggered so that Selective owed Plaintiffs the duty to defend the underlying lawsuits and pay any damages arising from those suits; and (2) Selective's obligation to pay damages and defense costs, under the terms of the policies, would arise only after the insureds, LPS and MAISL, exhausted one $500,000 self-insured retention (SIR) per plaintiff per policy period. (*Id.* at PgID 3405, 3449.) The Court reasoned that "[t]he allegations in the *Doe* lawsuit, even if unspecific, are sufficient to impose a duty to defend on Selective, which in turn justifies Selective's position that there were occurrences in the 2010-2011 policy period." (*Id.* at PgID 3406–07.)[1]

Second, on February 13, 2020, the Court declined to modify its prior holding that, for the purposes of Selective's duty to defend and Plaintiffs' obligation to exhaust one SIR per occurrence, there were three occurrences alleged in the 2010-

---

[1] The Court also made several other findings, only one of which is relevant: there is a question of fact as to whether Selective is estopped from denying defense or indemnity costs under separate umbrella policies. (*Id.* at PgID 3442–43.)

2011 policy year, one per *Doe* plaintiff. (ECF No. 93, O&O II, PgID 3948–62.) The Court found that the *Doe* complaint, which alleged that Turbiak and Respondek committed acts of physical and emotional abuse against the three plaintiffs "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)," (ECF No. 1-10, *Doe* Federal Complaint, PgID 464), arguably alleged that each *Doe* plaintiff suffered bodily injury from the alleged abuse in both school years. (ECF No. 93, O&O II, PgID 3960–61.) Therefore, the *Doe* Complaint alleged three occurrences in the 2010-2011 school year, and three in the 2011-2012 school year. The Court emphasized that the fact that "[e]vidence of specific incidents in the 2010-2011 school year did not emerge during discovery" did not change the number of occurrences for Selective's duty to defend and Plaintiffs' obligation to exhaust one SIR per occurrence. (*Id.* at PgID 3961.)

On February 7, 2020, Selective filed its Motion to Confirm Satisfaction of Defense Obligations and Dismiss Counts VII and VIII of Plaintiffs' Amended Complaint as Moot. (ECF No. 92.) On February 20, 2020, Plaintiffs responded to Selective's Motion with a motion of their own, Motion to Apportion All of the Doe Lawsuit Defense Expenses to the 2011-2012 Policy Period and for Judgment on the Specific and Aggregate Excess Loss Claims (ECF No. 94), and a brief intended to both respond to Selective's Motion and provide the legal argument for their Motion (ECF No. 95.) Both motions seek a final judgment resolving the last legal issue in

the case—whether to apportion the defense costs associated with the *Doe* case equally between the 2010-2011 and 2011-2012 policies or whether to apportion all of the costs to the 2011-2012 policy.

### III. ANALYSIS

There is no dispute that, as of January 31, 2020, Selective had paid $1,759,847.95 to Plaintiffs for the defense of the three underlying lawsuits. (ECF No. 95-3, Plaintiff Risx-Facs Report, PgID 3987; ECF No. 98-3 Defendant Risx-Facs Report, PgID 4015.) The question before the Court is whether that was more than Selective owed to Plaintiffs, or less.

Selective asserts, in its Motion, that, under this Court's interpretation of the policies, it overpaid Plaintiffs by $6,405.92. (ECF No. 98, Reply, PgID 3998.) Selective calculated the amount that it owed Plaintiff by apportioning half of the cost of defending the *Doe* lawsuit to the 2010-2011 policy, and half to the 2011-2012 policy. (*See* ECF No. 98-3 Defendant Risx-Facs Report, PgID 4015 (detailing calculation).) It did so based on its understanding that "Michigan law requires that defenses [sic] costs for each Doe plaintiff be allocated equally between the 2010-2011 and 2011-2012 primary policies." (ECF No. 92, Motion for Final Judgment, PgID 3910.) Accordingly, Selective seeks a final judgment declaring that it has satisfied its defense obligations and is entitled to a $6,405.92 reimbursement from Plaintiffs. (ECF Nos. 92, 98.)

Plaintiffs, in their Motion and Response, ask the Court to apportion all of the *Doe* defense expenses to the 2011-2012 policy year and thereby find that Selective still owes $935,609.76 in defense costs. (ECF Nos. 94, 95.) They argue that this is the correct method of apportionment because, in the *Doe* case, no specific act of misconduct was alleged or proven during the 2010-2011 school year, so no occurrence actually happened during that year, and it is therefore unreasonable to apportion any defense costs to that policy year. (*See id.*) Plaintiffs argument is based on a misreading of the case law and this Court's prior decisions.

Michigan law is clear that, when coverage is triggered under multiple successive insurance policies by injuries occurring over multiple policy years, coverage should be apportioned according to the "time-on-the-risk" approach. *Arco Indus. Corp. v. American Motorists Ins. Co.*, 232 Mich. App. 146, 159–64 (1998). "Under this method, insurers are responsible for the portion of the underlying injury that occurred during their policy period; the effect is to prorate coverage for continuous damage across each period that the damage occurred." *Id.* at 161.

Generally, the time-on-the-risk method of apportionment is used for claims involving continuous, indivisible injuries, such as asbestosis from long-term asbestos exposure, *e.g. Ins. Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224–25 (6th Cir. 1980), or environmental damage from long-term pollution, *e.g. Arco*, 232 Mich. App. at 159–64. But, it has also been applied in other

6

contexts, such as in *City of Sterling Heights v. United Nat'l Ins. Co.*, where the underlying lawsuits involved defamation claims that occurred over a period of three years and caused indivisible injuries. 319 F. App'x 357 (6th Cir. 2009). This approach is an administrable way to ensure that insurers are required to provide coverage for only the portion of the injury that occurred during the bargained-for policy period, and so should be applied whenever an alleged injury or set of injuries spans multiple policy periods. *See Arco*, 232 Mich. App. at 162 ("[Defendant] must provide coverage for damage sustained 'during the policy period,' but not for the years outside the policy period.").

The time-on-the-risk method of allocation applies to both indemnity costs and defense costs. *See Forty-Eight Insulations*, 633 F.2d at 1224–25 (rejecting argument that breadth of duty to defend requires insurers to pay total costs of defense even if part of the underlying lawsuit concerned events outside of the policy period). The rationale for this is simple: "[t]he insurer has not contracted to pay defense costs for occurrences which took place outside the policy period," so, if there is a reasonable way to apportion the defense costs, such as the time-on-the-risk method, the defense costs must be apportioned. *Id.* The only difference between defense costs and indemnity costs, as explained in the prior Opinion and Order, is that an insurer owes defense costs whenever the allegations in the underlying case arguably allege that an injury occurred during the policy period, whereas an insurer owes indemnity costs

7

only after the insured's liability for an injury during the policy period has been conceded or proved. (*See* ECF No. 93, O&O II, PgID 3960.)

In this case, the *Doe* plaintiffs alleged that they were exposed to a "pattern of abuse" which included physical, verbal, and emotional abuse "on multiple occasions in the 2010-2011 and/or 2011-2012 school year(s)." (ECF No. 1-10, *Doe* Federal Complaint, PgID 464, 472.) The Court has twice held that these allegations trigger defense coverage under the 2010-2011 policy and the 2011-2012 policy because they arguably allege that each *Doe* plaintiff suffered bodily injuries during each policy year. (ECF No 76, O&O I, PgID 3961; ECF No. 93, O&O II, PgID 3405–07, 3449.) Further, the litigants and the Court have consistently treated the injuries alleged by the *Doe* plaintiffs as continuous and indivisible—no party has argued that each individual act of abuse constituted its own occurrence, suggesting that each alleged act of abuse contributed to a continuous injury to each child, just as each exposure to asbestos contributed to the continuous injury of asbestosis in *Forty-Eight Insulations*. 633 F.2d 1212. Therefore, it is appropriate to use the time-on-the-risk method of apportionment here.

Applying the time-on-the-risk method to the defense costs of the *Doe* lawsuit is straightforward. The *Doe* complaint alleged three occurrences in the 2010-2011 policy period and three occurrences in the 2011-2012 policy period. In other words, the *Doe* plaintiffs alleged that each of them suffered bodily injury over the course of

two policy years. Consequently, the defense costs related to these alleged injuries must be apportioned equally between the two policy years.

It is irrelevant to the proper allocation of defense costs that evidence of misconduct and bodily injury during the 2010-2011 policy period never emerged in the underlying lawsuits for the exact same reason that evidence of bodily injury was not needed to trigger the duty to defend in the first place—the duty to defend is broad, "includes groundless and frivolous claims," and cannot be determined with the benefit of hindsight. *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 455 (1996). It follows, then, that an insurer cannot argue, as Plaintiffs do here, that time-on-the-risk apportionment of defense costs is inappropriate when the plaintiffs in the underlying lawsuit fail to unearth sufficient evidence to support their original claims of bodily injury during one of the policy periods.

Based on this analysis, the Court agrees with Selective—Michigan law and the Court's prior holdings in this case require the defense costs for each *Doe* plaintiff to be allocated equally between the 2010-2011 and 2011-2012 policies. (*See* ECF No. 92, Motion for Final Judgment, PgID 3910.) Under this calculation, Selective overpaid Plaintiffs by $6,405.92 and is entitled to reimbursement. (*See* ECF No. 98, Reply, PgID 3998.)

Finally, Selective, in its Motion, also asserts that "any question as to whether coverage could be owed under the umbrella policies is now moot" because the

underlying lawsuits were defended and settled within the limits of the primary policies. (ECF No. 92, Motion for Final Judgment, PgID 3912.) Plaintiffs did not respond to this claim, and so have waived any objection to it. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") The Court therefore finds that Counts VII and VIII of Plaintiffs' Complaint are moot.

## V. CONCLUSION

For those reasons, the Court GRANTS Defendant's Motion to Confirm Satisfaction of Defense Obligations and Dismiss Counts VII and VIII of Plaintiffs' Amended Complaint as Moot (ECF No. 92), and DENIES Plaintiffs' Motion to Apportion All of the Doe Lawsuit Defense Expenses to the 2011-2012 Policy Period and for Judgment on the Specific and Aggregate Excess Loss Claims (ECF No. 94). Therefore, Plaintiffs are ordered to reimburse Defendant $6,405.92.

There are no remaining legal or factual disputes to be resolved, so the Court orders the case to be closed on the docket.

IT IS SO ORDERED.

Dated: July 17, 2020                          s/Paul D. Borman
                                              Paul D. Borman
                                              United States District Judge

10